### In The
# United States Court of Appeals
### For The Fourth Circuit

## RANDOLPH LEE DARNELL,

*Plaintiff – Appellee,*

## v.

## DARREN MARSHALL HART,

*Movant – Appellant,*

### and

### SAM R. LLOYD; HULLIHENS LAWN CARE SERVICE, a/k/a Hullihen's Lawn Care; HULLIHEN'S LAWN CARE, INC., trading as Hullihen's Lawn Care,

*Defendants.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NEWPORT NEWS

———————————

## REDACTED BRIEF OF APPELLEE

———————————

Kevin W. Mottley
THE MOTTLEY LAW FIRM PLC
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
(804) 930-1022

*Counsel for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1915__     Caption: __Randolph Lee Darnell v. Darren Marshall Hart, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Randolph Lee Darnell__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____08/30/2016_____

Counsel for: Appellee Randolph Lee Darnell

## CERTIFICATE OF SERVICE
***************************

I certify that on ___August 30, 2016___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Darren Marshall Hart
5806 Grove Ave, Suite 717
Richmond, Virginia 23226

_____          _____08/30/2016_____
(signature)                          (date)

- 2 -

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ---------------------------------------------------------------- ii

**INTRODUCTION** --------------------------------------------------------------------- 1

**STATEMENT OF THE CASE** ------------------------------------------------------ 3

   1.   Prior to his withdrawal, Hart severely mishandled Darnell's case. ----------------- 3

   2.   Hart stopped work on Darnell's case, disappeared, and left Darnell to his own devices. ------------------------------------------------------------------------------- 9

   3.   Despite Hart's deficient work on Darnell's case, Darnell's new counsel were able to secure a settlement favorable to Darnell. ------------------------------------------- 13

   4.   After a settlement was reached, Hart filed his Motion for Attorney's Fees. ----- 15

**SUMMARY OF THE ARGUMENT** ----------------------------------------------- 16

**ARGUMENT** ------------------------------------------------------------------------ 20

   1.   Standard of Review --------------------------------------------------------------- 20

   2.   Because Hart failed to produce necessary transcripts of evidentiary hearings held by the district court, he has waived his arguments on appeal. ---------------------- 20

   3.   Hart's argument that he should receive all of the fees purportedly owed to him by contract is contrary to Virginia law. ---------------------------------------------- 23

   4.   Hart's statement that the evidence he presented was "uncontroverted" and that the district court "failed to account for" that evidence is contrary to the record. 26

   5.   The district court adequately considered the *County of Campbell* Factors and explained its reasoning in determining Hart's award. ------------------------------- 29

   6.   The district court's award of $2,298.20 in costs is supported by the evidence. -- 31

**CONCLUSION** --------------------------------------------------------------------- 31

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS** ----------------------------------------------------------------------- 33

**CERTIFICATE OF SERVICE** --------------------------------------------------- 34

# TABLE OF AUTHORITIES

## CASES

*Badgett v. Fed. Express Corp.*,
55 Fed. Appx. 149 (4th Cir. 2003) --------------------------------------------------- 21

*Braude & Marguiles, PC v. Pierce Assocs.*,
1989 U.S. App. LEXIS 22240 (4th Cir. 1989) ----------------------------------- 20, 29

*Cornelius v. McHugh*,
2016 U.S. App. LEXIS 10912 (4th Cir. June 16, 2016)------------------------------- 21

*County of Campbell v. Howard*,
133 Va. 19 (1922) ----------------------------------------------------------------- passim

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999)--------------------------------------------------------- 30

*Enovative Techs., LLC v. Leor*,
622 Fed. Appx. 212 (4th Cir. 2015)-------------------------------------------------- 21

*Heinzman v. Fine, Fine, Legum & Fine*,
217 Va. 958 (1977)---------------------------------------------------------- 17, 24, 25

*Hughes v. Cole*,
251 Va. 3 (1996)---------------------------------------------------------------------- 29

*In re: Outsidewall Tire Litig.*,
636 Fed. App'x 166 (4th Cir. 2016) ------------------------------------- 18, 20, 29, 30

*Keller v. Prince George's Cnty.*,
827 F.2d 952 (4th Cir. 1987)--------------------------------------------------------- 21

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013) --------------------------------------------------------- 20

*Morris Law Office, P.C. v. Tatum*,
388 F. Supp. 689 (W.D. Va. 2005)------------------------------------------------ 25

*United States v. Al-Hamdi*,
356 F.3d 564 (4th Cir. 2004)------------------------------------------------- 30

<u>OTHER AUTHORITIES</u>

VSB Legal Ethics Opinion 1812 --------------------------------------------- 25

<u>RULES</u>

Fed. R. App. P. 10(b)(1)(A)--------------------------------------------------- 20

Fed. R. App. P. 10(b)(2) ------------------------------------------------ 20, 22

Fed. R. App. P. 11(a)---------------------------------------------------------- 21

Fed. R. App. P. 25------------------------------------------------------------- 34

Fed. R. App. P. 28(a)(6) ----------------------------------------------------- 3

Fed. R. Civ. P. 26(a)(2)(B)----------------------------------------------- 4, 6

Local Rule 10(c)(1) ----------------------------------------------------------- 20

Local Rule 28(f) ------------------------------------------------------------- 3

# INTRODUCTION

Before surrendering his license to the Virginia State Bar, Appellant Darren Marshall Hart represented Appellee Randolph Lee Darnell in a personal injury action arising from an automobile accident. In early August 2015, weeks before a crucial deadline for Hart to disclose Darnell's expert witness reports and less than four months before trial, Hart ceased work on Darnell's case, stopped communicating with him, and took no steps to protect Darnell's interests. During this timeframe, Hart never notified Darnell or the district court of any health issues that impeded his ability to represent Darnell. Hart simply left Darnell to his own devices.

Hart's incompetent, unprofessional handling of Darnell's case began much earlier. While representing Darnell, Hart missed a hearing, failed to develop dispositive expert testimony regarding the causation of Darnell's injuries, failed to associate co-counsel despite admitting that he needed assistance with Darnell's case, failed to adequately prepare for depositions, relied on Darnell to review litigation documents and remember filing deadlines, and acted unprofessionally during meetings with Darnell.

Because of Hart's bungled handling of Darnell's case, the case was in danger of being dismissed and was worth practically nothing. To save his case, Darnell had to locate new counsel to take over after Hart's withdrawal. Thus, Hart

contributed very little towards the settlement ultimately achieved. Indeed, Hart's successor counsel achieved a favorable settlement for Darnell despite Hart's incompetence, negligence, and misconduct.

Considering this and other evidence in the record – and analyzing each of the factors set forth by the Supreme Court of Virginia in *County of Campbell v. Howard*, 133 Va. 19 (1922) and its progeny – the district court awarded Hart *quantum meruit* attorney's fees in the amount of $7,500.00 and costs in the amount $2,298.20. J.A. at 1098.

Hart challenges the district court's ruling, arguing that he is entitled to a six-figure award for his purported fees and costs. However, in addition to the fact that Hart has waived ***any*** argument on appeal by failing to provide necessary transcripts to this Court, Hart's arguments are directly contrary to facts set forth in the record, as well as established law. The district court's ruling should be affirmed.

# STATEMENT OF THE CASE[1]

## 1. Prior to his withdrawal, Hart severely mishandled Darnell's case.

Hart's appeal of the district court's ruling on his Motion for Attorney Fees stems from a personal injury action removed to the United States District Court for the Eastern District of Virginia. This underlying action arose from a May 25, 2012 automobile accident, in which Darnell suffered a traumatic brain injury. J.A. at 644-45. On May 21, 2014, Darnell hired Hart to represent him in his case against the driver of the truck that struck him and his employer. J.A. at 856.

The trial date for Darnell's case was initially set for May 19, 2015. J.A. at 20. In November 2014, Hart associated another attorney, David Paul Morgan, to serve as his co-counsel. J.A. at 857, 1086. Hart explained to Darnell that he

---

[1]    In his Opening Brief, Hart includes four separate sections dedicated to describing the purported "facts" of this case. Throughout each of them, Hart repeatedly makes bizarre assertions that are – at best – irrelevant to the issue on appeal, unsupported by the record, and/or supported only by his self-serving testimony, and are – at worst – demonstrably false.

These assertions are far too numerous and inconsequential to warrant a response here, especially given Hart's abject failure to cite to any portion of the record that might support his claims, in contravention of Rule 28(a)(6) and Local Rule 28(f). However, examples include: (1) Hart's false assertion that Defendant Sam R. Lloyd admitted during his deposition that he was "drunk at the time that he crashed into Darnell" and that he "intended to hit Darnell's car" because it was "[f]un," Hart Br. at 5; (2) Hart's bizarre and possibly defamatory statements about Dr. William C. Walker, M.D., *id.* at 6; (3) Hart's false assertion that Darnell did not put on evidence at the hearing on Hart's Motion for Attorney's Fee and ruled "solely upon Hart's provision of evidence," *id.* at 8-9, and (4) Hart's false assertion that the district court "did not rule" on his Motion to Withdraw, *id.* at 14.

3

associated Mr. Morgan because needed "█████████" to handle the case.  J.A. at

857, 1091.  Moreover, contrary to Hart's initial assurance to Darnell that he was

experienced in handling brain injury cases, Hart testified that he did not have

"brain injury experience," and "that's what Mr. Morgan was to provide."  J.A. at

1026.  In other words, Hart felt that he could not handle a complex brain injury

case in federal court alone.

On January 20, 2015, Morgan filed Darnell's expert witness disclosures in

accordance with the district court's scheduling order.  J.A. at 20, 806.  Absent from

the disclosure was Darnell's primary treating physician for his traumatic brain

injury, William C. Walker, M.D. ("Dr. Walker").  J.A. at 806.  Given his extensive

treatment of Darnell and his field of expertise, Dr. Walker was the most important

expert witness in the case.

Darnell's Rule 26(a)(2)(B) expert witness reports were due on February 20,

2015.  J.A. at 20.  Before this deadline, on February 2, 2015, Morgan unexpectedly

died.  J.A. at 1086.  On February 20, 2015, Hart filed a motion to continue the May

19, 2015 trial and a brief in support of his motion.  J.A. at 43, 47.  In both the brief

and the Motion, Hart wrote that he needed a continuance to give him time to

associate new co-counsel in place of Morgan, specifically to retain and develop

expert witnesses in the case.  J.A. at 43-50.  The district court granted Hart's

Motion "████████████████" and set a new trial date of December 1, 2015.

J.A. at 52, 1091.

Hart never associated new co-counsel to assist him with Darnell's case, J.A. at 1091, although he told Darnell that he needed to do so.[2] J.A. at 857. Although Hart testified that he contacted other attorneys to no avail, J.A. at 912, Hart actually enlisted Darnell to solicit potential co-counsel directly on Hart's behalf, which both Darnell and the other attorneys found to be strange. J.A. at 858, 1091. One of those lawyers told Darnell that Hart's preparation of his case, and particularly the preparation of the expert witness disclosures, "was way behind schedule." J.A. at 858. Darnell confronted Hart with that concern, which Hart dismissed, replying "we've got months." *Id.*

Over the course of his representation of Darnell, Hart repeatedly displayed unprofessional, negligent, and concerning behavior. For example, Hart:

- Failed to prepare Darnell for his deposition in any fashion, J.A. at 857, 1091;

- Inexplicably failed to appear in Court for a May 14, 2015 hearing on various discovery motions, even though Hart himself had told Darnell about the hearing, J.A. at 858, 1091;

---

[2] Because of Hart's failure to associate new co-counsel, Darnell was forced to take out a high-interest litigation funding loan in the amount of $15,000, purportedly to finance expert witness fees and other expenses in his case, despite his obvious financial inability to front such costs. J.A. at 859, 1090.

- Sabotaged a meeting with Darnell in his law office by betting on horse races over the internet in the middle of the meeting, *id*;

- Admitted to Darnell that he had not read Defendants' discovery responses or the documents they had produced months earlier, leaving Darnell and his wife to review them for Hart, J.A. at 859, 1091; and

- Failed to prepare for depositions of two Defendants and failed to bring his case file to Pennsylvania where the depositions were being held on July 8, 2015, *id*.

Darnell did not receive any communications from Hart between July 8, 2015 and August 2, 2015. J.A. at 859. Around that time, Darnell contacted Hart and his legal assistant regarding upcoming expert witness deadlines in the case. J.A. at 860. It was obvious to Darnell that Hart did not know when these deadlines fell, as Hart went so far as to ask Darnell what he thought the deadline was.[3] *Id.* Around the same time, Hart frantically called Darnell's wife, asking her to bring various medical records, reports, and depositions to his office because he could not find them in his files. *Id.*

On August 3, 2015, one month before they were due, Hart produced Darnell's Rule 26(a)(2)(B) disclosures to defense counsel. J.A. at 923. Unsurprisingly, given the confusion and panic regarding the deadline, the

---

[3] The updated deadlines for expert witness disclosures and reports were plainly set forth in the scheduling order entered by the district court after Hart obtained a continuance of the trial date following Morgan's death. *See* J.A. at 53 (setting a deadline of August 3, 2015 for Darnell to "identify expert witnesses" and a deadline of September 3, 2015 for Darnell to provide Rule 26(a)(2)(B) disclosures).

disclosures were deficient in obvious respects. Most importantly, the disclosures failed to address the most critical issue in the case concerning the relationship between the May 25, 2012 automobile collision and a subsequent May 30, 2012 syncopal spell suffered by Mr. Darnell. J.A. at 981-84. The overwhelming majority of Darnell's medical expenses, excepting approximately $1,500.00 related to Darnell's emergency room visit immediately following the automobile accident, were directly attributable to the May 30, 2012 syncope. *Id.* Thus, the critical causation issue was whether the syncope was caused by the automobile collision. *Id.*

Although connecting these dots was the most important task in Darnell's case, Hart failed to provide Darnell's expert witnesses with the necessary information to do so. For example, Hart failed to provide Darnell's primary treating physician, Dr. Walker, with emergency room records from the night of the syncope. J.A. at 809, 982. These records were replete with references by Darnell's treating physicians that linked the auto collision to the syncope. J.A. at 983. Because Walker was not aware of this information, he was unable to (1) establish a causal link between Darnell's automobile collision and his syncope and (2) unable to exclude the syncope and resulting fall as the sole cause of Darnell's traumatic brain injury in either his deposition or his expert report. J.A. at 810-14.

Indeed, with Hart at the helm, none of Darnell's experts had the information necessary to render those causation opinions. Consequently, Defendants filed a series of motions *in limine* requesting that the court exclude any opinion rendered by Darnell's experts that medical treatment rendered to Darnell after the May 30, 2012 syncope was caused by the automobile accident. J.A. at 61-629. Defendants also filed a motion for partial summary judgment seeking to dismiss Darnell's case "with prejudice insofar as it relate[d] to any medical treatment, medical expenses, physical pain, mental anguish, lost wages, or other damages allegedly suffered by [Darnell] after [his] May 30, 2012 falling incident." J.A. at 630.

Because of the deficient manner in which Hart prepared Darnell's case, Defendants' motions were likely to be granted. *See* J.A. at 1090 (ruling that Hart "███████████████████████████████████████████"). Thus, as a result of Hart's deficient work on Darnell's case, it was worth approximately $1,500.00.[4]

---

[4]   Notably, after representing Darnell for more than a year, and for months past the date when a trial of the matter was originally scheduled, Hart never communicated a single settlement offer to Darnell. J.A. at 979.

### 2. Hart stopped work on Darnell's case, disappeared, and left Darnell to his own devices.

Unfortunately, the foregoing problems paled in comparison to what came after. In early August 2015, shortly after Hart produced the faulty expert witness disclosures, Hart abandoned Darnell as his client and disappeared. J.A. at 953.

Matters became critical when, in late August or early September 2015, Darnell learned that he had been ordered to submit to a defense medical examination by one of Defendants' expert witnesses, Scott Sautter, Ph.D (the "DME"). J.A. at 860. Darnell made numerous attempts to contact Hart to discuss the upcoming DME, to no avail. *Id.* Finally, on September 12, 2015, Hart called Darnell and left a cryptic voicemail on Darnell's phone, in which he said that he had sought "anonymous" "advice" from the Virginia State Bar, and the "the bottom line is to keep calm and carry on." *Id.* After receiving the voicemail, Darnell made numerous attempts to call Hart back, but he could not reach him, and Hart failed to return his phone calls. *Id.*

On September 22, 2015, Darnell received an e-mail from Hart's legal assistant, Jack Sniffin, advising him that "it is imperative that you attend the evaluation in Dr. Sautter's office on September 23, 2015. Mr. Hart is not physically or psychologically able to advise you regarding the procedural issues you have with this evaluation. If you fail to attend I believe it could severely prejudice your case." J.A. at 875.

The following day, in desperation, Darnell contacted Richmond attorney Wyatt B. Durrette, Jr. – a family friend of Darnell's – for help. After he was contacted by Darnell, Durrette sent an email to Hart and Sniffin, urging that Hart "take charge" of Darnell's case, "communicate with and advise Randy, or take steps to have someone else take over the cases."[5] J.A. at 876.

On September 28, 2015, having not received any response from Sniffin or Hart, Darnell hand-delivered, mailed, and e-mailed a letter to Hart and Sniffin urging Hart to contact him immediately and indicating that, if Hart failed to do so, Darnell would have no choice but to report the situation to the Virginia State Bar. J.A. at 877. The next morning, Darnell received a phone call from Sniffin, who indicated that Hart was "not capable of being responsive" to him. J.A. at 862. Sniffin further advised Darnell that he should assume that Hart had performed no work on his cases since August 9, 2015, when Hart had taken a trip to Malaysia. *Id.* Finally, Sniffin informed Darnell that Hart had received a letter from a doctor saying that he was unable to practice law. *Id.*

Time sheets produced by Hart demonstrate that Hart performed a total of ***36 minutes*** of work on Darnell's case after August 7, 2015. J.A. at 773. However,

---

[5]     In addition to the personal injury case at bar, Hart was also representing Darnell in connection with a case filed in the Virginia Workers Compensation Commission and a wrongful termination case pending the Circuit Court of Chesterfield County, Virginia. J.A. at 861, 864. Hart's abandonment of Darnell led to difficulties and adverse consequences in those cases, as well. *Id.*

Hart's time entries and ECF filings from other cases suggest that he was still engaging in the practice of law during August and September 2015. For example, time entries filed by Hart in *Smith v. Ray, et al.*, Case No.2:08-cv-281 (E.D. Va.) indicate that Hart dedicated ***62.6 hours*** to work on that case between August 10, 2015 and September 14, 2015.[6] J.A. at 822-23. In another case, *Prior v. Teamsters Local 101, et al.*, Case No. 3:14-cv-00527 (E.D. Va.), Hart filed a 27-page response in opposition to a motion for summary judgment on September 9, 2015. J.A. at 829-55. During this timeframe, Darnell went to Hart's office numerous times and observed that Hart's car was coming and going from the parking lot. J.A. at 862. Given the amount of time Hart was dedicating to other cases, it is now apparent that he was simply ignoring Darnell.

On October 8, 2015, not having heard from Hart, Darnell went to Hart's office and retrieved his file from Sniffin. J.A. at 862. Subsequently, on October 20, 2015, Hart filed a misleading Motion to Allow Counsel to Withdraw (the "Motion to Withdraw"), in which he falsely represented to the Court that he was seeking leave to withdraw due to Darnell's conduct in retrieving his file from

---

[6]     A trial was set in *Smith* for September 15, 2015. On September 14, 2015, Hart telephoned Magistrate Judge Douglas E. Miller's chambers to inform the court that he had suffered a "medical emergency" and would need to postpone the trial. Subsequently, on September 23, 2015, the court in *Smith* received a letter from Hart's doctor stating that Hart would be "unable to appear in court for the foreseeable future." J.A. at 827-28. Hart never shared this information with either Darnell or the trial court.

Hart's office and Darnell's "failure to pay certain contractual obligations" to Hart & Assoc., P.C. According to Hart, Darnell's purported failure to pay expenses "started more than one (1) year ago" and persisted "[d]espite demand." J.A. at 57-60.

These assertions are wrong. Prior to seeking withdrawal, Hart never discussed with Darnell that he would have to withdraw from the case if Darnell did not finance litigation expenses. Hart knew full well that Darnell, who had no income and was on food stamps, could not afford to pay for such expenses. That is the biggest reason Hart associated Morgan. He needed an attorney to finance experts.[7] J.A. at 863.

Hart never informed Darnell that he had filed a Motion to Withdraw. Darnell only became aware of Hart's attempt to withdraw from his case because **defense counsel** forwarded a copy of Hart's motion to Durrette. J.A. at 898.

On October 24, 2015, Darnell received a letter postmarked October 22, 2015, but dated October 14, 2015, from Hart. J.A. at 863. In the letter, Hart stated that he was "terminating" his agreement to provide legal services to Darnell. J.A. at 878. Unlike Hart's Motion to Withdraw, the letter asserted that he was doing so

---

[7] In contrast to his Motion to Withdraw in Darnell's case, which only mentioned Hart's health problems in passing, similar motions filed by Hart in *Smith* and another case, *Morales v. Moore*, Case No. 7:13-cv-00527 (W.D. Va.), blamed Hart's withdrawal solely on "health reasons" and his "imminent immigration to Malaysia." J.A. at 815-820.

because he was "closing his law practice." *Id.* Several days later, Darnell received a "Statement" from Hart dated October 13, 2015. J.A. at 864. The statement reflected a total "Amount Due" of $9,952.04. J.A. at 880. Most of these charges, including the majority of a "Balance forward" listed on the invoice, related to other cases Hart was handling for Darnell. J.A. at 880-81. Only $2,298.20 reflected costs incurred in this case. *Id.*

After conducting a hearing, the district court granted Hart's Motion to Withdraw by an Order entered on November 9, 2015. J.A. at 639. Additionally, the district court postponed the deadlines set forth in the scheduling order and the December 1, 2015 trial date, gave Darnell until December 15, 2015 to locate new counsel, and stated that new deadlines would be set at that time. *Id.*

### 3. Despite Hart's deficient work on Darnell's case, Darnell's new counsel were able to secure a settlement favorable to Darnell.

Darnell retained new trial counsel, including Durrette, Stephen M. Smith, Kevin W. Mottley, and Benjamin P. Kyber ("Darnell's New Trial Counsel"). J.A. at 980. Smith, Mottley, and Kyber noted their appearances in the case on December 14, 2015. J.A. at 12. Durrette had previously done so in connection with his representation of Darnell in connection with Hart's Motion to Withdraw. J.A. at 11.

Upon undertaking the case, it immediately became apparent to Darnell's New Trial Counsel that, due to Hart's deficient work, Darnell's case was "in

shambles." J.A. at 981. Between December 2015 and the new trial date set by the district court, April 26, 2016, Darnell's new trial counsel spent countless hours, among other things:

- Organizing Hart's disorganized case file;

- Retaining and preparing new expert witnesses and re-doing Hart's faulty expert witness disclosures;

- Drafting and filing a Second Amended Complaint to increase the *ad damnum* clause and assert obvious claims against the corporate defendant that had been neglected by Hart;

- Propounding and answering discovery on behalf of Darnell;

- Deposing witnesses and defending numerous depositions;

- Retaining an e-discovery vendor and reviewing thousands of Darnell's e-mails in a last minute effort to respond to a discovery request from Defendants to which Hart had failed to respond for more than a year;

- Filing motions *in limine* and responding to similar motions filed by Defendants;

- Engaging in settlement discussions and negotiations with defense counsel; and

- Preparing for trial.

J.A. at 12-17, 980-93.[8]

---

[8] In an apparent effort to cast himself as the attorney primarily responsible for Darnell's case, Hart falsely claims that Darnell's New Trial Counsel did none of these things. Hart Br. at 14. The record demonstrates otherwise.

Because of these considerable efforts, Darnell's New Trial Counsel were able to obtain a $500,000.00 settlement on the eve of trial, an amount *far* exceeding the value of the case at the time of Hart's withdrawal.  J.A. at 990.

**4.  After a settlement was reached, Hart filed his Motion for Attorney's Fees.**

On May 11, 2016, Hart filed a Motion for Attorney's Fees in the district court.  In his motion, Hart claimed that he was entitled to a total of $107,625.97 in attorney's fees and costs stemming from his representation of Darnell.  J.A. at 654. This amount included $102,091.40 in fees for services provided by Hart and his "paralegal," Sniffin, an amount calculated simply by multiplying Hart's and Sniffin's hourly rates ($335/hr and $110/hr, respectively) by the number of hours that they purportedly worked on Darnell's case.  J.A. at 715.

Darnell opposed Hart's motion, arguing that Hart was not entitled to an award of fees because (1) Hart lost his right to enforce his legal services contract with Darnell because he committed the first material breach of the contract by abandoning Darnell; and (2) under Virginia law, there is no controlling authority suggesting that an attorney who withdraws from a contingency fee representation is entitled to recover fees.  J.A. at 787-99.  Alternatively, Darnell argued that, if Hart was entitled to an attorney's fee award, an analysis of the *quantum meruit* factors adopted by the Supreme Court of Virgina dictated that Hart was entitled to far less than $107,625.97.  J.A. at 800-02.

The district court conducted two evidentiary hearings on Hart's motion, on July 15 and July 17, 2016. J.A. at 900, 901. Hart testified and presented evidence at both hearings. J.A. at 900-1032. At the second hearing, Darnell testified and also called one of his new trial counsel, Kevin Mottley, to testify. *Id.* Subsequently, the district court issued an Opinion & Order on July 22, 2016, in which it granted Hart's motion and awarded him $7,500.00 in attorney's fees, based on an analysis of the Supreme Court of Virginia's *quantum meruit* factors, and $2,298.20 in "███████████."[9] J.A. at 1098.

Hart appeals this award.

## SUMMARY OF THE ARGUMENT

By failing to provide this Court with a complete record, Hart has waived his appellate argument. Hart failed to order or file the transcript of a June 15, 2016 evidentiary hearing on his Motion for Attorney's Fees. Without access to that transcript, this Court cannot properly determine whether the record contains all reasons stated "███████████" for the district court's decision. Nor can it consider all evidence introduced in the district court. The district court's decision must therefore be affirmed.

---

[9]     The amount of costs awarded to Hart by the district court matches precisely the amount of costs attributable to this case that is reflected in the invoice sent to Darnell by Hart after Hart notified Darnell of his withdrawal.

Hart has also failed to identify any "clear error" or "abuse of discretion" warranting reversal of the district court's award of attorney's fees.

Hart's argument that the district court should have awarded him fees in accordance with his contract to Darnell is directly contrary to the Supreme Court of Virginia's decision in *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958 (1977). That case establishes that the calculation of an attorney's fee award owed to an attorney who represented a client on a contingency fee basis must be based on the *quantum meruit* factors set forth in *County of Campbell v. Howard*, 133 Va. 19 (1922), not on the attorney's contract with the client. Moreover, the type of alternative hourly fee arrangement in Hart's contract with Darnell, which Hart relies on here, violates Virginia's attorney ethics rules and is unenforceable.

The remainder of Hart's arguments are unsupported by the record. For example, Hart claims that the evidence he presented during the hearings on his Motion for Attorney's Fees was "uncontroverted" and that the district court failed to take Hart's evidence into account in rendering its decision. Neither allegation is true. In addition to presenting testimony at the June 17 hearing, Darnell filed two affidavits. The evidence and testimony provided by Darnell – which addressed Hart's deficient handling of his case and the substantial amount of work needed to correct Hart's errors resulting from Hart's errors and abandonment of Darnell – rebutted Hart's characterization of the character, quality, importance, and value of

his work, as well as the character displayed by Hart in representing Darnell. The district court's Opinion & Order made clear that it considered the evidence and testimony offered by Hart. However – in undertaking an analysis of the *County of Campbell* factors – the district court properly considered the evidence by Darnell as well.

Hart also asserts that the district court "failed to explain its award of attorney's fees to Hart" and failed to explain its "calculation" thereof. Again, that is false. In making this argument, Hart relies on *In re: Outsidewall Tire Litig.*, 636 Fed. App'x 166 (4th Cir. 2016). However, in that case, this Court reversed and remanded the district court's attorney's fee ruling because the district court failed to explain its reasoning regarding ***any*** of the *County of Campbell* factors. In contrast, the district court here made numerous findings of fact and analyzed ***all*** those factors. Thus, the district court's Opinion & Order in this case sufficiently explained the court's reasoning, and the district court properly exercised its broad discretion to determine the amount of attorney's fees awarded to Hart.

Finally, Hart's argument that he is owed $5,534.57 in unpaid costs finds no support in the record. Hart offered no evidence indicating that any unpaid costs other than the $2,298.20 awarded by the district court relate to this matter and not other matters in which Hart represented Darnell. On the contrary, the $2,298.20 figure arrived at by the district court matches the exact amount of costs relating to

this case that is reflected on the final invoice sent by Hart to Darnell after Hart

moved to withdraw from this case.

For these reasons, the district court's ruling should be affirmed.

# ARGUMENT

## 1.  Standard of Review

This Court "review[s] for abuse of discretion a district court's award of attorney's fees, but . . . will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (citation omitted); *see also In re: Outsidewall Tire Litig.*, 636 Fed. Appx. 166, 171 (4th Cir. 2016) ("[A] district court enjoys broad discretion to award attorney's fees based on its first-hand knowledge of the case."); *Braude & Marguiles, PC v. Pierce Assocs.*, 1989 U.S. App. LEXIS 22240, *10 (4th Cir. 1989) (holding that "the relative weight" to be given to the *quantum meruit* factors for determining an attorney's fee award under Virginia law is "within the sound discretion of the trial court").

## 2.  Because Hart failed to produce necessary transcripts of evidentiary hearings held by the district court, he has waived his arguments on appeal.

Rule 10 of the Federal Rules of Appellate Procedure imposes a "duty" on the appellant to order transcripts of district court proceedings that are necessary for an appellate court to consider his appeal.  FRAP 10(b)(1)(A).  This duty is absolute when "the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence."  FRAP 10(b)(2).  In those circumstances, the appellant "must include in the record a transcript of all evidence relevant to that finding or conclusion."  *Id*; *see also* Local Rule 10(c)(1)

("The appellant has the duty of ordering transcripts of all parts of the proceedings material to the issues to be raised on appeal whether favorable or unfavorable to the appellant's position."); FRAP 11(a) ("An appellant filing a notice of appeal must comply with Rule 10(b) and must do whatever else is necessary to enable the clerk to assemble and forward the record.").

This Court has repeatedly held that an appellant who fails to uphold his duty under Rules 10(b) and 11(a) by failing to produce a relevant transcript waives review of issues on appeal that relate to the unproduced transcript or depend upon it to show error. *See, e.g.*, *Cornelius v. McHugh*, 2016 U.S. App. LEXIS 10912, *1-2 (4th Cir. June 16, 2016); *Enovative Techs., LLC v. Leor*, 622 Fed. Appx. 212, 213-14 (4th Cir. 2015); *Keller v. Prince George's Cnty.*, 827 F.2d 952, 954 fn.1 (4th Cir. 1987). It appears from this Court's prior decisions that the proper remedy for an appellant's failure to file a necessary district court transcript is not the dismissal of his appeal, but rather summary affirmance on the record before the Court.[10] *Badgett v. Fed. Express Corp.*, 55 Fed. Appx. 149, 150 (4th Cir. 2003).

Here, the sole issue giving rise to Hart's appeal is the district court's ruling on his Motion for Attorney's Fees. The crux of Hart's argument is that the evidence presented to the district court supported a greater award than the one he

---

[10]     Darnell previously filed a Motion to Dismiss based on Hart's failure to file all of the necessary transcripts, Doc. 31, which was denied by an Order of this Court entered on November 29, 2016, Doc. 35.

received.  In other words, Hart urges on appeal "that a finding or conclusion is unsupported by the evidence or contrary to the evidence."  FRAP 10(b)(2).  Thus, Hart was required to "include in the record a transcript of *all* evidence relevant to that finding or conclusion."  *Id.*

Hart failed to do so.  As the record makes clear, the district court held *two* evidentiary hearings that specifically focused on Hart's Motion for Attorney's Fees: on June 15 and June 17, 2016.  Hart gave testimony and presented evidence at both hearings.  J.A. at 900-02.  The evidence presented at each hearing was different, as demonstrated by Hart's statement at the beginning of the June 17 hearing that he intended to introduce "*additional* documents . . . that might go to address some of the issues."  J.A. at 905 (emphasis added).  The district court, in turn, cited both hearings in its Opinion & Order, J.A. at 1087, and issued its ruling, in part, for the reasons stated "███████████."  J.A. at 1099.

Nevertheless, Hart failed to order or produce a transcript of the June 15 hearing.  Without access to this transcript, this Court cannot determine whether it has before it all of the reasons for the district court's decision that were stated "██ ████████."  Nor can it properly evaluate whether the totality of the evidence presented on Hart's Motion for Attorney's Fees supports an outcome different than the one that the district court reached.  Under such circumstances, this Court

cannot properly consider the arguments raised Hart's appeal, and the district court's decision should be affirmed.

**3. Hart's argument that he should receive all of the fees purportedly owed to him by contract is contrary to Virginia law.**

In his brief, Hart claims that the fee owed to him by Darnell – upon the termination of the representation – was "fixed" by his legal services contract with Darnell at a rate of 46% of the settlement received or $250/hour. It is unclear how either of these methods of calculation result in the $102,091.40 in attorney/paralegal fees sought by Hart – which, as stated above, was arrived at by multiplying the hourly rates for Hart and his "paralegal," Sniffin ($335/hr and $110/hr, respectively) by the number of hours Hart claims that they worked on Darnell's case. On the contrary, with respect to the hourly rate, Hart relies on a provision in his May 21, 2014 legal representation agreement with Darnell that purports to charge Darnell those rates in "any matter where *quantum meruit* recovery becomes an issue." J.A. at 658.

Hart's position is contrary to law. Under Virginia law, in a contingency fee situation, the amount of an attorney's fee award owed by a client to an attorney discharged by the client "without just cause" is based not on any contract between

the attorney and client.[11]  Rather, it is determined on a *quantum meruit* basis, with

regard for the factors set forth by the Supreme Court of Virginia in *County of*

*Campbell v. Howard*, 133 Va. 19 (1922) and its progeny.  *Heinzman v. Fine, Fine,*

*Legum & Fine*, 217 Va. 958 (1977).

Indeed, both the Virginia State Bar and the United States District Court for

the Western District of Virginia have recognized that alternative fee arrangements

like the one Hart is attempting to impose on Darnell are unethical and

unenforceable.  In a 2005 Legal Ethics Opinion ("LEO"), the Virginia State Bar

Legal Ethics Committee considered a fee agreement like the one relied upon by

Hart here.  In rejecting the propriety of such an agreement, the Committee wrote:

> Unfortunately, the second sentence of the proposed language goes too
> far and actually appears to set an hourly rate for *quantum meruit*
> analysis, which is misleading and, therefore, impermissible.
>
> Based upon the foregoing, the committee opines that the second
> sentence of the termination clause in the proposed [legal services]
> contract is improper as it is misleading and fails to fully inform the
> client of the basis of the attorney's fee when a contingent fee
> representation is terminated by the client before its completion.

---

[11]  According to the district court, the evidence is "███████████████████
███████████████████████████████████████████████████" J.A. at 1094.  The district court made no
finding that, if Darnell did discharge Hart, he did so "without just cause;" however,
given Hart's bizarre behavior, disappearance, and failure to protect Darnell's
interests, no reasonable trier of fact could determine that Darnell lacked cause to
discharge Hart under the circumstances.  Nevertheless, the district court
determined that Hart was entitled to receive "████████████████" for his services
to Darnell.  *Id.*

VSB LEO 1812.

Hart's fee agreement with Darnell is even more improper than the one considered by the Virginia State Bar in rendering LEO 1812. Not only does Hart's fee agreement purport to set an hourly rate in lieu of the proper *quantum meruit* anaylsis, it purports to establish that Darnell would be responsible for paying Hart's fees if Hart discharged Darnell at any time, "regardless of the reason." Hart Br. at 26. Thus, not only is Hart's contract with Darnell not the proper touchstone for an analysis of the amount of fees owed to Hart, it was unethical for Hart to have Darnell sign such a contract in the first instance.

Similarly, in *Morris Law Office, P.C. v. Tatum*, 388 F. Supp. 689, 692 (W.D. Va. 2005), the court considered a contingency contract containing an alternative fee clause applicable if the client "terminated the contract prior to final judgment." The court ruled that the clause was "unenforceable under *Heinzman* and Virginia ethics rules." *Id.* at 693. The same is true of Hart's contract.

The Supreme Court of Virginia's decision in *Heinzman* itself also contradicts Hart's claim that he is entitled to a contingency fee amounting to 46% of the settlement obtained by Darnell. Indeed, that was the precise argument rejected by the Supreme Court in that case. *See Heinzman*, 217 Va. 958, 965 (reversing the trial court's decision awarding an attorney a contractual contingency

fee amounting to 1/3 of Plaintiff's settlement and remanding to the trial court to determine the amount owed to the attorney using a *quantum meruit* anaylsis).

Thus, Hart's position that he is entitled to a contractual hourly rate and/or a 43% contingency fee is directly contrary to Virginia law, and the district court did not err in rejecting it.

**4. Hart's statement that the evidence he presented was "uncontroverted" and that the district court "failed to account for" that evidence is contrary to the record.**

At various points in his brief, Hart makes the remarkable assertion that the evidence he presented at the hearing on his Motion for Attorney's Fees[12] was "uncontroverted," "unrebutted," and that "[t]he district court relied solely upon Hart's provision of evidence." Hart Br. at 9, 21, 27. This is false. Hart is correct that no evidence in the record rebuts the amount of time Hart spent working on Darnell's case. However, the "amount . . . of services rendered" and the "labor, time and trouble involved" are only two of the nine *quantum meruit* factors established by the Supreme Court of Virginia in *County of Campbell*, 133 Va. at 51. In addition to those factors, a district court determining the amount of a *quantum meruit* award to be paid to an attorney must consider: (1) "the responsibility imposed"; (2) "the character and importance of the matter"; (3) "the

---

[12] To the extent this Court can consider such evidence in the absence of a transcript containing a substantial portion of it.

professional skill and experience called for"; (4) "the character and standing in their profession of the attorneys"; (5) "whether or not the fee is absolute or contingent"; and (6) "[t]he result secured by the services of the attorney." *Id.*

The record contains abundant documentary evidence and controverting Hart's characterization of the character, quality, importance, and value of his work, as well as the character displayed by Hart in representing Darnell. For example, Darnell executed and filed in the district court a lengthy affidavit describing the many problems he had with Hart, both before and after Hart purportedly fell ill. J.A. at 856-67. Darnell's affidavit describes a long saga of missed hearings, failure to develop dispositive expert testimony regarding the causation of Darnell's injuries, failure to associate co-counsel despite admitting that he needed assistance with Darnell's case, failure to adequately prepare for depositions, reliance on Darnell to review litigation documents and remember filing deadlines, and unprofessional behavior exhibited during meetings with Darnell. *Id.* This culminated in Hart abandoning Darnell, taking no steps to protect his interests, and, ultimately, displaying a stunning lack of candor to the district court by blaming Darnell for his need to withdraw. *Id.*

Darnell's recounting of Hart's behavior in the final months of the representation was corroborated by an affidavit signed by Wyatt B. Durrette, Jr., an attorney Darnell turned to in desperation after Hart left him to his own devices in

the face of rapidly approaching deadlines and significant events in Darnell's case. J.A. at 897-899. It was also corroborated by Darnell's own testimony during the hearing on Hart's Motion. J.A. at 949-79.

Additionally, the Court heard testimony from one of Darnell's New Trial Counsel, Kevin Mottley. J.A. at 980-1007. Mottley's testimony – which described the extremely poor condition in which Hart left Darnell's case and the significant amount of work needed to right the ship – served to rebut Hart's assertions that his work was efficient and valuable in the context of Darnell's complex brain injury case. *Id.* It also served to rebut Hart's false allegations that Darnell's New Trial Counsel "relied" extensively on the work performed by Hart and contributed little to Darnell's case. *Id.*

Hart's assertion the district court "failed to account for" the evidence of the time and effort he expended on the case is similarly contradicted by the record. In its Opinion & Order, the district court explicitly stated that it considered the length of time Hart represented Darnell, the number of hours Hart purportedly spent working on Darnell's case, as well as the type of work that Hart performed on Darnell's case. *See* J.A. at 1095-96. Undoubtedly, the district court considered Hart's evidence in rendering its decision.

**5. The district court adequately considered the *County of Campbell Factors* and explained its reasoning in determining Hart's award.**

In cases like this one, where the issue of attorney's fees is governed by Virginia law, this Court has directed district courts to apply the factors set forth by the Supreme Court of Virginia in *County of Campbell.*[13] *In re: Outsidewall Tire Litig.*, 636 Fed. Appx. at 170; *Braude & Marguiles, PC*, 1989 U.S. App. LEXIS 22240 at *9. In doing so, "a district court need not recite and make express findings as to each and every factor," however, it must "analyze relevant factors in detail sufficient to allow for meaningful appellate review." *Id.* at 171. As long as it engages in such analysis, "a district court enjoys broad discretion to award attorney's fees based on its first-hand knowledge of the case," *id.*, and "the relative weight to be given these factors as well as additional considerations are within the sound discretion of the trial court." *Braude & Marguiles, PC*, 1989 U.S. App. LEXIS 22240 at *10.

In his brief, Hart argues that this case fits the narrow error recognized by this Court in *In re: Outsidewall Tire Litig.* because – according to Hart – "[t]he district court failed to explain its award of attorney's fees to Hart." Hart Br. at 26. This assertion is simply false. In *In re: Outsidewall Litig.*, the district court failed to

---

[13] The *County of Campbell* factors, which are described at pp. 23-24, *supra*, were reaffirmed by the Supreme Court of Virginia in *Hughes v. Cole*, 251 Va. 3, 25 (1996).

explain its reasoning with respect to *any* of the *County of Campbell* factors. Instead, it merely stated that "[n]o further adjustment, upward or downward, is warranted by application of the *County of Campbell* factors." *In re: Outsidewall Tire Litig.*, 636 Fed. Appx. at 170. In contrast, the district court here explained its reasoning with respect to *every* factor set forth in *County of Campbell* and applied its broad discretion by weighing those factors and determining Hart's award.[14]

Thus, Hart's assertion that the district court "failed to explain its award" and the "calculation" thereof lacks merit.

The district court considered all of the evidence before it, including the evidence offered by Hart, and it made numerous findings of fact relevant to each of the factors set forth in *County of Campbell*. In the end, the district court determined that Hart's lack of experience in handling brain injury cases, "██ ██████████████████████████████████████████████████" Darnell, Hart's failure to perform "██████" work necessary to add actual value to Darnell's case, the "████████" behavior exhibited by Hart during the representation, and Hart's

---

[14] Notably, in the two-page argument section of his opening brief, Hart merely argues that the district court "did not explain its reasoning" and "provided no explanation to support its calculation" of its fee award. Hart Br. at 26-27. Hart *does not* argue on appeal that the district court weighed any of the *County of Campbell* factors incorrectly or failed to properly analyze any of those factors. Accordingly, those issues have been waived. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 fn.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.") (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999)).

conduct during the period leading up to his withdrawal led to a significant reduction in the *quantum meruit* value of Hart's services.  J.A. at 1090-98.  The district court acted within its "broad discretion" and committed no "clear error" in reaching this conclusion.

6. **The district court's award of $2,298.20 in costs is supported by the evidence.**

Finally, Hart claims that he is owed $5,534.57 in unpaid costs arising from this case.  There is no evidence in the record establishing that the costs arising from this case – and not, for example, the workers' compensation or wrongful termination cases handled by Hart for Darnell – amounted to $5,534.57.  On the contrary, the sole piece of evidence breaking down the costs owed to Hart by case is the final invoice sent by Hart to Darnell after he moved to withdraw from the representation in October 2015.  That invoice shows that Darnell owed a total of $2,298.20 in unpaid costs arising from this litigation.  J.A. at 880-81.  That is the figure relied upon by the district court in awarding Hart costs in the same amount.  J.A. at 1089.  Because the district court's ruling on the issue of costs is fully supported by the evidence in the record, the district court did not err in awarding Hart $2,298.20 in "███████████."  J.A. at 1098.

## CONCLUSION

By failing to file relevant transcripts, Hart has waived his ability to challenge the district court's ruling on appeal.  However, to the extent that Hart has not

waived his arguments on appeal, the district court considered the relevant evidence, weighed the proper factors, and adequately explained its reasoning in determining the *quantum meruit* attorney's fees to be paid to Hart. The district court also relied upon established evidence in the record to determine the costs owed to Hart by Darnell. In doing so, the district court acted within its "broad discretion" and committed no "clear error" of fact or law. Accordingly, the district court's ruling should be affirmed.

Respectfully submitted,

RANDOLPH LEE DARNELL

By: /s/     Kevin W. Mottley

Kevin W. Mottley (VSB No. 40179)
The Mottley Law Firm PLC
*Counsel for Appellee Randolph Lee Darnell*
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
Ph: (804) 930-1022
Fax: (804) 767-2592
Email: *kevinmottley@mottleylawfirm.com*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

Counsel for the Appellee certifies:

1. That this brief has been prepared using Microsoft Word and the typeface Times New Roman 14 point.

2. That exclusive of the table of contents, table of authorities, and certificate of service, the brief contains 7,520 words and, excluding required tables and certificates, is within the limits allowed.

Counsel for the Appellee understands that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

/s/___Kevin W. Mottley___

Kevin W. Mottley, Esq.
Counsel for Appellee

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25, I hereby certify that I have this 5th day of December, 2016, electronically filed the foregoing using the Court's CM/ECF system which will send notifications of such filing to the Appellant:

Darren Marshall Hart
Hart & Associates, P.C.
5806 Grove Avenue, Suite 717
Richmond, Virginia 23226
(804) 673-9339
info@richmond-law.com

I further certify that I have, on the same day, filed the required copies of the Appellee's Brief in the Clerk's Office of the United States Court of Appeals for the Fourth Circuit.

/s/___Kevin W. Mottley___

Kevin W. Mottley, Esq.
Counsel for Appellee